UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* [SEALED],<br>   Plaintiff,<br>      - against -<br>[SEALED],<br>   Defendants. | Civil Action No.: _____<br><br>FALSE CLAIMS ACT<br>COMPLAINT<br><br>**[FILED UNDER SEAL]** |

**FILED IN CAMERA AND UNDER SEAL PURSUANT TO**
**31 U.S.C. § 3730(b)(2)**
**DO NOT POST ON ECF**
**DO NOT PUT IN PRESS BOX**

POLLOCK COHEN LLP
60 Broad St., 24th Fl.
New York, NY 10004
(212) 337-5361

*Counsel for Plaintiff-Relator*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE of NEW YORK<br>*ex rel.* WILLIAM GURIN,<br><br>    Plaintiff-Relator,<br><br>    - against -<br><br>NEW YORK CITY HEALTH AND HOSPITALS CORPORATION D/B/A NYC HEALTH + HOSPITALS and THE NEW YORK COLLEGE OF PODIATRIC MEDICINE,<br><br>    Defendants. | Civil Action No.: _____<br><br>FALSE CLAIMS ACT COMPLAINT<br><br>**[FILED UNDER SEAL]** |

*Qui tam* plaintiff and Relator William Gurin, through his undersigned attorneys, hereby brings this action on behalf of the United States of America and the State of New York against New York City Health and Hospitals Corp. d/b/a NYC Health + Hospitals ("NYC H+H") and the New York College of Podiatric Medicine (the "College"). The claims asserted in this Complaint are based on the facts and information set forth below and upon information and belief, unless otherwise stated.

## NATURE OF THE ACTION

1.    Relator sues Defendants NYC H+H and the College to recover treble damages and civil penalties on behalf of the United States of America for their several schemes to maximize income from their podiatry practice using inadequate or nonexistent medical supervision and submitting false claims for payment to Medicare, Medicaid, and other federally-funded government healthcare programs (hereinafter referred to as "Government Healthcare Programs").

2. Relator also sues the Defendant College to recover treble damages and civil penalties on behalf of the State of New York for its several schemes to maximize income from its podiatry practice using inadequate or nonexistent medical supervision and submitting false claims for payment to Medicaid.

3. Defendants knew they did not meet the established criteria set by the various Government Healthcare Programs and other applicable laws and regulations.

4. Defendants NYC H+H and the College engaged in these widespread frauds against the United States in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* ("FCA"). In addition, Defendant College's conduct violated the New York False Claims Act, State Finance Law §§ 187 *et seq.* ("NYFCA").

5. In or about November 1999, NYC Health + Hospitals entered into a contractual relationship with the College through which the College assumed responsibility for administering the Podiatry Department (the "Department") at NYC Health + Hospitals/ Lincoln ("Lincoln"). Under the contract, the College became responsible for, among other things, providing faculty and attending podiatrists to examine podiatric patients at Lincoln. Also, as part of this contract, Lincoln permitted the College's students to observe and intern at the Department subject to the supervision of the Department's licensed podiatrists. At all times the Department was subject to Lincoln's ultimate control and supervision.

6. For the period in or about and between January 2012 to December 2017, both dates being approximate and inclusive, the Defendants directed the College's students to (i) perform the tasks and medical work of licensed podiatrists; and (ii) access patient electronic medical records using the password of a licensed attending podiatrist so that the College student would be able to document the electronic medical records in the name of attending podiatrists in order to complete the process by which the Defendants were able to bill Government Healthcare

Programs for services that were purportedly completed by properly credentialed podiatrists but which were, in fact, actually completed and documented by the College students.

## I. Parties

### A. Relator – William Gurin, Esq.

7. Relator William Gurin resides in Brooklyn, New York, and from February 2012 to March 2018 was an employee of New York City Health and Hospitals Corporation.

8. By letter dated October 21, 2019, Relator provided notice to the United States Attorney General, the United States Attorney for the Southern District of New York, and the Attorney General of the State of New York regarding the fraud at issue here.

### B. Defendant – New York City Health and Hospitals Corp. d/b/a NYC Health + Hospitals/Lincoln

9. New York City Health and Hospitals Corp. d/b/a NYC Health + Hospitals is a Public Benefit Corporation under New York Unconsolidated Laws §§ 7384(1) and has a central administrative office located at 125 Worth Street, New York, New York.

### C. New York College of Podiatric Medicine

10. The New York College of Podiatric Medicine is a private podiatric college that claims to have graduated 25% of all the podiatrists in the nation and has a principal place of business located at 53 East 124th Street, New York, New York.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1345 because this action involves a federal question and the United States is a plaintiff. This Court also has subject matter jurisdiction under 31 U.S.C. § 3732(a).

12. The Court may exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

13. The Court may exercise personal jurisdiction over Defendants under 31 U.S.C. § 3732(a). The Court has personal jurisdiction over Defendants because they regularly transact business within this District.

14. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) & (c) because Defendants transact business or are found within this District and a substantial part of the events establishing the alleged claims arose in this District.

15. This Complaint is not based on a public disclosure as defined in 31 U.S.C. § 3730(e). Relator sues as the original source of information regarding Defendants' violations of the FCA, given that Relator has direct and independent knowledge of the information on which the allegations are based and/or knowledge that is independent of and materially adds to any allegations or transactions that may have been publicly disclosed (although Relator knows of no such public disclosure).

16. No allegation in this Complaint is based on a public disclosure of allegations or transactions in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, administrative, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or from the news media. Rather, Relator is the original source.

## FACTS

### I. Governing Laws

#### A. The Federal False Claims Act

17. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained because of fraud against the United States.

18.     The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government], a false or fraudulent claim for payment or approval," "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or conspires to do so. 31 U.S.C. § 3729(a)(1). Any person found to have violated these provisions is liable for a civil penalty of not less than $11,181 and not more than $22,363 for each such violation, plus three times the damages sustained by the Government.

19.     The FCA imposes liability where the conduct is "in reckless disregard of the truth or falsity of the information" and clarifies that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b).

20.     The FCA also broadly defines a "claim" to include "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that … is made to a contractor, grantee, or other recipient if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest…" 31 U.S.C. § 3729(b)(2)(A).

21.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to sue on behalf of the Government and to share in any recovery. 31 U.S.C. § 3730(b).

**B.     The New York False Claims Act**

22.     The New York False Claims Act ("NYFCA") largely mirrors the FCA and similarly imposes liability upon any person who "knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval," "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," or conspires to do so. NY State Fin. Law § 189(1)(a)-(c).

23. Any person found to have violated these provisions is liable for a civil penalty of not less than $11,181 and not more than $22,363 for each such violation, plus three times the damages sustained by the State. NY State Fin. Law § 189(1).

24. The NYFCA imposes liability where the conduct is "in reckless disregard of the truth or falsity of the information" and clarifies that "no proof of specific intent to defraud" is required. NY State Fin. Law § 188(3).

25. Also like the FCA, the New York law broadly defines a "claim" to include "any request or demand, whether under a contract or otherwise, for money or property that: (i) is presented to an officer, employee or agent of the state or a local government; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the state or a local government's behalf or to advance a state or local government program or interest, and if the state or local government (A) provides or has provided any portion of the money or property requested or demanded; or (B) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." NY State Fin. Law § 188(1).

26. The NYFCA also empowers private persons having information regarding a false or fraudulent claim against the State to sue on behalf of the State and to share in any recovery. NY State Fin. Law § 190(2), (6).

### C. The Federal Health Benefit Programs

27. Medicare was created in 1965 by Title XVIII of the Social Security Act and is by far the largest health plan in the United States. Medicare Part A (the basic plan of hospital insurance) covers the cost of hospital inpatient stays and post-hospital skilled nursing facility care. 42 U.S.C. §§ 1395j to 1395w-4. Medicare Part B is a federally subsidized, voluntary insurance

program that covers a percentage (typically 80%) of the fee schedule amount of physician and laboratory services. 42 U.S.C. §§ 1395k, 13951, 1395x(s).

28. Medicare is generally administered by the Centers for Medicare and Medicaid Services ("CMS"), which is an agency of the Department of Health and Human Services. CMS establishes rules for, and contracts with private companies to handle, the day-to-day administration of Medicare.

29. The funds used to pay Medicare Part A claims come both from federal payroll and general tax revenues. The funds to pay for Part B come from premiums paid by Social Security recipients and general U.S. tax revenues.

30. Under the relevant Medicare rules and regulations, "teaching physician[s] must personally perform (or re-perform) the physical exam and medical decision-making activities of the E/M service being billed[.]" Medicare Claims Processing Manual at 100.1.1(B);[1] 42 CFR § 415.172 (requiring that medical records document that the teaching physician was physically present when services were rendered).

31. "Medicare does not pay for any service furnished by a student." Medicare Claims Processing Manual at 100 (definition of "Student").

32. Naturally, hospitals must maintain medical records which accurately reflect which provider performed which services. *See gen.* 42 CFR § 482.24(b).

33. Medicaid is a joint federal-state program that provides healthcare benefits for certain groups, primarily the poor and disabled. States administer their own Medicaid programs under federal regulations that govern what services should be provided and under what

---

[1] Sections 100 and 100.1.1B of the Medicare Claims Processing Manual are available here: https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/clm104c12.pdf.

conditions. CMS monitors the state-run programs and establishes requirements for service delivery, quality, funding, and eligibility standards. The federal government provides a portion of each state's Medicaid funding, known as the Federal Medical Assistance Percentage ("FMAP"). The FMAP is based on the state's per capita income compared to the national average. 42 U.S.C. § 1396d(b). State Medicaid programs must cover inpatient hospital services.

## II. The Lincoln/College relationship.

34. In November 1999, New York City Health and Hospitals Corp and the College entered into a one-year contract which provided for the College to administer the Department subject to the ultimate control and direction of Lincoln. The one-year contract first signed in 1999 auto-renewed on an annual basis and remains in effect to this day.

35. Under the contract, the College was responsible for providing the faculty and attending podiatrists to run the Department and see and treat patients.

36. The College was permitted to have its students observe the work of the Department and even have direct patient contact if the College provided appropriate New York licensed and registered Board-Certified Podiatrists to directly supervise the students. CMS defines a student as "an individual who participates in an accredited educational program (e.g., medical school) that is not an approved GME [Graduate Medical Education] program and who is not considered an intern or resident. Medicare does not pay for any services furnished by a student." Medicare Claims Processing Manual at 100 (definition of "Student"). A student is not regarded as a "physician in training," and the service provided is not eligible for reimbursement consideration under the teaching physician rules.

37. Within Lincoln, ultimate responsibility for the Podiatry Department resides with the Department of Surgery.

### III. The student work scheme.

38. Instead of properly running the Podiatry Department and directly supervising College students' patient contact, Defendants employed the College students as a supplemental labor force to examine patients and improperly utilized the students to (i) perform licensed podiatrist tasks without appropriate supervision and (ii) document patient electronic medical records in the name of an attending licensed podiatrist.

39. The Department was unlawfully organized to take advantage of, and fraudulently bill for, the College students' work.

40. In operation, the Department utilized three examination rooms, two licensed podiatrists, and 12 College students per shift.

41. In most, if not all, cases, the College students would provide the initial interaction with the Department's patients including the initial examination and treatment plan creation.

42. As part of their responsibilities, the College students would use the name of a licensed podiatrist to access Quadramed, the Electronic Medical Record ("EMR") of Lincoln, and to document services provided to the Department's patients.

43. In this way, the examination, medical judgment, planning, and treatment of the students were recorded in the EMR as if they had all been provided by the signed-in attending podiatrist. At no time did the EMR reflect the name of the College student who had completed the medical record.

44. In order to complete the billing process, and before a bill could be submitted for payment, attending podiatrists were required to review and "sign off" on the completed medical record. In many cases, this "sign off" did not occur until days or a week after the patient was examined and the licensed podiatrist signing off did not know the identity of the College student who prepared the medical record.

45. No student names appear in the EMR because all EMR documentation was improperly prepared while the system was signed-in under one of the attending podiatrists' identities.

46. For example, on or about November 9, 2016, Patient X went to the Department with an ankle injury.

47. Patient X was seen by two third-year podiatry students who examined her and prescribed an MRI.

48. At no time was Patient X examined or seen by a licensed podiatrist.

49. Nevertheless, a Department Podiatrist, "signed" her chart and submitted a bill to Patient X's insurance carrier as if she had in fact seen and examined Patient X

50. Furthermore, on many occasions when an actual podiatrist examined a patient, in order to expedite the process by which bills could be submitted for payment, a different podiatrist other than the one who actually examined the patient would click to approve an EMR record for a patient encounter despite the fact that the approving podiatrist was not even on shift at the time of the patient's visit and therefore could not possibly have examined the patient or known the name of the student who completed the EMR.

51. Upon information and belief, on some occasions the podiatrist approving EMR records was not even present the day the patient was actually seen.

52. In other words, attending podiatrists were taking credit for, and billing for, work they did not do but was instead performed by students and other attending podiatrists.

53. On many occasions, no attending podiatrist would interact with a patient seen by students. Nevertheless, an attending podiatrist would still electronically sign the patient chart as if she or he had personally performed the medical tasks and judgments reflected therein.

54. Defendants would then falsely and fraudulently bill Government Healthcare Programs for all of the above described patient interactions as if they had been completed by an attending podiatrist when they had not been.

55. Defendants also falsely and fraudulently billed Government Healthcare Programs for work completed by attending podiatrists while misrepresenting which podiatrist actually performed the services.

56. By employing the College students in this way, the Defendants were able to generate patient flows of as many as 50-60 patients per day per attending podiatrist.

57. It is not possible for a single attending podiatrist to actually see, examine, treat, and document that many patients in a single day.

58. Assuming an eight-hour workday, seeing 60 patients per day would leave no more than eight minutes per patient for all examination, planning, treatment, and charting responsibilities – and not a single minute for changing or cleaning rooms, using the restroom, taking a rest break, or eating food.

59. A more reasonable number of daily patient encounters is 18 patients per attending per day.

60. Defendants, and not Relator, have access to the actual bills and medical records that Defendants falsely created and submitted to Government Healthcare Programs as part of this fraudulent student work scheme.

61. Indeed, it is not possible for Relator to obtain or possess these documents which contain sensitive and personally identifying health information.

## CAUSES OF ACTION
### COUNT I – Violation of 31 U.S.C. § 3729(a)(1)(A)
### (Against All Defendants)

62. Relator repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

63. The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), imposes liability upon those who knowingly present or cause to be presented false claims for payment or approval.

64. Defendants knowingly caused to be presented false or fraudulent claims for payment or approval to the United States for podiatry services that were not performed by the podiatrist who attested to performing the billed services and therefore were not reimbursable by the relevant Government Healthcare Programs.

65. Defendants knew or should have known (as defined in 31 U.S.C. § 3801(a)(5)) that they had for years caused to be made false or fraudulent claims for payment to Government Healthcare Programs.

66. Each of the claims caused to be submitted by Defendants is a separate false and fraudulent claim.

67. Defendants caused to be presented these claims knowing their falsity, or in deliberate ignorance or reckless disregard that such claims were false.

68. The United States was unaware of the foregoing circumstances and conduct of Defendants and, in reliance on said false and fraudulent claims, authorized payments to be made on the false claims Defendants caused to be made, made such payments, and has been damaged.

69. Because of these false or fraudulent claims caused to be submitted by Defendants, the United States has been damaged in an amount to be determined at trial.

## COUNT II – Violation of 31 U.S.C. § 3729(a)(1)(B)
### (Against All Defendants)

70. Relator repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

71. The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), imposes liability upon those who knowingly make, use, or cause to be made or used false records or statements material to a false or fraudulent claim.

72. Defendants knowingly and willfully violated the False Claims Act by making, using, or causing to be made or used, false records or statements material to false or fraudulent claims.

73. Specifically, for purposes of obtaining or aiding to obtain payment or approval of reimbursement claims made to Government Healthcare Programs, the Defendants made or presented, or caused to be made or presented, to the United States false or fraudulent records, knowing these records to be false or fraudulent, or acting with reckless disregard or deliberate ignorance thereof.

74. Each medical record, bill, and invoice submitted to the government in support of Defendants' above-described false claims is a separate false record or statement and separate violation of 31 U.S.C. § 3729(a)(1)(B).

75. The United States was unaware of the foregoing circumstances and conduct of the Defendants and, in reliance on said false and fraudulent records, authorized payments to be made to the Defendants, made such payments, and has been damaged.

76. Because of these false or fraudulent statements submitted or caused to be submitted by Defendants, the United States paid the claims, resulting in damages to the United States in an amount to be determined at trial.

## COUNT III – Violation of 31 U.S.C. § 3729(a)(1)(C)
### (Against All Defendants)

77. Relator repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

78. The False Claims Act, 31 U.S.C. § 3729(a)(1)(C), imposes liability upon those who conspire to commit a violation of another sub-section of the False Claims Act.

79. Defendants knowingly, in reckless disregard, and/or in deliberate ignorance of the truth conspired between themselves, with their employees and administrators, and others to violate the False Claims Act.

80. Defendants conspired to cause to be submitted false and fraudulent claims related to the provision of podiatry services by students and podiatrists other than the podiatrists who attested to the performance of the services and submitted bills therefore.

81. Defendants did in fact cause the submission of false and fraudulent claims for podiatry services.

82. As a consequence of their conspiracies, the United States paid these claims when it would not have but for Defendants' unlawful conduct.

83. As a result of these conspiracies, and the resulting false or fraudulent claims submitted or caused to be submitted by Defendants, the United States paid the claims, resulting in damages to the United States in an amount to be determined at trial.

**COUNT IV – Violation Of New York False Claims Act**
**State Fin. Law § 189(1)(a)**
**(Against the College Only)**

84. Plaintiff repeats and re-alleges all previous paragraphs with the same force and effect as if the same were set forth more fully at length herein.

85. The College violated State Finance Law § 189(1)(a) in that they knowingly presented, or caused to be presented, a false or fraudulent claim for payment.

86. Specifically, the College had knowledge that the podiatrists signing and approving charts and medical bills had not actually performed the tasks detailed in those medical charts and bills.

87. Nevertheless, the College presented, or caused to be presented, these false claims for payment to Government Healthcare Programs including programs funded by the State of New York.

88. All such monies were for use by New York State and the State was damaged by the College's conduct.

89. The State of New York was unaware of the foregoing circumstances and conduct of the College and, in reliance on said false and fraudulent claims, authorized payments to be made on the false claims the College caused to be made, made such payments, and has been damaged.

90. Because of these false or fraudulent claims submitted or caused to be submitted by the College, the State of New York been damaged in an amount to be determined at trial.

## COUNT V – Violation Of New York False Claims Act
### State Fin. Law § 189(1)(b)
### (Against the College Only)

91. Relator repeats and re-alleges the preceding paragraphs as if fully set forth herein.

92. The College violated State Finance Law § 189(1)(b) in that it knowingly made, used, or caused to be made or used false records or statements material to a false or fraudulent claim.

93. Specifically, for purposes of obtaining or aiding to obtain payment or approval of reimbursement claims made to Government Healthcare Programs, the College made or presented, or caused to be made or presented, to the State of New York false or fraudulent records, knowing these records to be false or fraudulent, or acting with reckless disregard or deliberate ignorance thereof.

94. Each medical record, bill, and invoice submitted to the government in support of the above-described false claims is a separate false record or statement and separate violation of State Fin. Law § 189(1)(b).

95. The State of New York was unaware of the foregoing circumstances and conduct of the College and, in reliance on said false and fraudulent records, authorized payments to be made to Defendants, made such payments, and has been damaged.

96. Because of these false or fraudulent statements submitted or caused to be submitted by the College, the State of New York paid the claims, resulting in damages to the State of New York in an amount to be determined at trial.

## COUNT VI – Violation Of New York False Claims Act
### State Fin. Law § 189(1)(c)
### (Against the College Only)

97. Plaintiff Relator repeats and re-alleges the preceding paragraphs as if fully set forth herein.

98. The College violated State Finance Law § 189(1)(c) in that it conspired to submit false claims for presentment and make false statements material to the false claim.

99. The College entered into this conspiracy so as to claim monies from the State of New York for the provision of podiatry services that were not performed by the podiatrist who attested to performing the billed services and therefore were not reimbursable by the relevant Government Healthcare Programs.

100. The College did in fact cause the submission of false and fraudulent claims for podiatry services.

101. As a consequence of their conspiracies, the State of New York paid these claims when it would not have but for the College's unlawful conduct.

102. As a result of these conspiracies, and the resulting false or fraudulent claims submitted or caused to be submitted by the College, the State of New York paid the claims, resulting in damages to the State of New York in an amount to be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff-Relator demands and prays that judgment be entered against Defendants, jointly and severally, as to the federal claims as follows:

A. ordering that Defendants cease and desist from violating the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*;

B. directing that each Defendant pay an amount equal to three times the amount of damages the United States has sustained because of such Defendant's actions;

C. directing that each Defendant, pursuant to the False Claims Act, 31 U.S.C.

§§ 3729 *et seq.*, pay penalties of not less than $11,181 and not more than $22,363 for each such Defendant's violation of the False Claims Act;

D. granting Plaintiff-Relator the maximum amount allowed under 31 U.S.C. § 3729, and/or any other applicable provision of law;

E. directing that each Defendant, jointly and severally, pay Plaintiff-Relator's fees and costs, including attorneys' fees, as provided by the False Claims Act;

F. directing that each Defendant pay interest on all sums ordered paid;

G. ordering that Relator recover such other relief as the Court deems just and proper; and

H. granting such other and further relief as the Court deems just and proper;

**AND WHEREFORE**, Plaintiff-Relator demands and prays that judgment be entered against the College, as to the claims under New York law as follows:

A. ordering that the College cease and desist from violating the NYFCA;

B. directing that the College pay an amount equal to three times the actual damages suffered by the State of New York and not less than $11,181 and not more than $22,363 for each such violation of the NYFCA, plus pre-judgment interest as appropriate;

C. directing that the College pay Plaintiff-Relator's fees and costs, including attorneys' fees, as provided by the NYFCA;

D. granting Plaintiff-Relator the maximum amount allowed under New York State Fin. Law § 190 and/or any other applicable provision of law;

E. directing that the College pay interest on all sums ordered paid;

F. ordering that Relator recover such other relief as the Court deems just and proper; and

G. granting such other and further relief as the Court deems just and proper.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby requests a trial by jury.

Dated: November 15, 2019
New York, NY

POLLOCK COHEN LLP

By: /s/ Adam L. Pollock

Adam L. Pollock
60 Broad St., 24th Floor
New York, NY 10004
Adam@PollockCohen.com
(212) 337-5361
*Counsel for Plaintiff Relator*